UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| John Powers<br><br>              Plaintiff<br><br>v.<br><br>Town of Durham<br><br>              Defendant | **FIRST AMENDED COMPLAINT**<br><br>Civil Action No. 1:23-CV-00327-SM<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Powers, by and through undersigned counsel, alleges against Defendant Town of Durham as follows:

1. Plaintiff was a Deputy Fire Chief employed at the Town of Durham (the "Town") from approximately July 2018 until Chief David Emanuel notified Plaintiff of his termination on or around March 19, 2020.

2. At the time that Plaintiff was notified of his termination, Plaintiff was working full time with an annual salary of about $91,000, plus other benefits, including paid time off, health and dental care, and retirement benefits.

3. In the late 1990s, Plaintiff was working for Exeter Hospital and was involved in a tragic event during which Plaintiff was unable to save a patient from jumping out of a window, which caused his death. This event led to Plaintiff's PTSD diagnosis. Plaintiff then began seeing a counselor regularly to stay on top of any mental health concerns.

4. Plaintiff began to work for the Town's Fire Department in 2011. The Town was aware that Plaintiff had been diagnosed with PTSD and continued to see a counselor on a regular basis to address lingering effects of his PTSD, which can include, without limitation, depression, hypervigilance, and difficulty communicating with others when feeling anxious or angry.

1

5. Plaintiff left his employment with the Town in 2016, and returned again in July of 2018 in the position of Deputy Fire Chief. Plaintiff's primary responsibilities included oversight of the fire prevention and safety programs.

6. Upon his return in 2018 the Town understood and agreed that Plaintiff could attend weekly counselor appointments in Exeter every Tuesday morning.

7. During the Fall of 2019 and early 2020, Plaintiff expressed concerns to Chief Emanuel about the work of the Prevention Office. These concerns included that the office had backlog of work, that building inspections continued without verifying that the proper permits had been obtained and fees paid, and generally that the Town was not following the law relative to the State's fire and life safety codes. During this time, Chief Emanuel expressed skepticism about Plaintiff's communication skills and efforts. Yet Chief Emanuel failed to follow through with Plaintiff's multiple requests for assistance, nor did he intervene relative to the cancellation of various coordination meetings Plaintiff considered critical to performing his job.

8. In January 2020, Plaintiff emailed Chief Emanuel requesting a meeting to work through both substantive work and general communication issues. Chief Emanuel declined to meet or substantively addresses his concerns.

9. Later in January 2020, Plaintiff spoke with James Rowan, who the Town had hired as a consultant to assess and improve organizational behavior within the Fire Department. Mr. Rowan stressed the need for Plaintiff to be open and honest with Chief Emanuel about his concerns. Plaintiff expressed to Mr. Rowan worries about such an approach, specifically that Chief Emanuel would retaliate against him because he would not be receptive to such open dialogue. Rowan insisted candor with Chief Emanuel was the best approach, and offered to have him join his weekly phone conference with Chief Emanuel. Plaintiff accepted, and expressed his

concerns to Chief Emanuel with Rowan on the call. Plaintiff did not feel like Chief Emanuel was receptive to his concerns.

10.     In February 2020, Plaintiff emailed a copy of his DISC Assessment to Chief Emanuel in hopes of improving our communication and working relationship. While his DISC Assessment does not directly reference his PTSD diagnosis, it provides complementary guidance on how, and under what conditions, Plaintiff works best. It notes that Plaintiff prefer first analyzing facts and data and weighing the pros and cons before making decisions. It also communicates that Plaintiff appreciate a manager who explains what is expected of me. Conversely, Plaintiff do not like a confrontational management style, will take issue when people attack the quality of his work, and may tend to explode when "enough is enough."

11.     On or around February 26, 2020, Assistant Chief Trull, Chief Emanuel, and Plaintiff met about Chief Emanuel's proposal to create coordinator positions to handle various tasks within the department. Assistant Chief Trull and Plaintiff expressed various concerns about Chief Emanuel's proposal. Hours later, a meeting with Chief Emanuel was placed on Plaintiff's calendar for the following day. The calendar notice did not specifically list a reason for the meeting.

12.     The next day Plaintiff met with Chief Emanuel and Assistant Chief Trull. Only after arriving that Plaintiff learned that this was a meeting where Plaintiff would receive a surprise performance improvement plan (PIP) from Chief Emanuel. Plaintiff informed Chief Emanuel that Plaintiff preferred to first read and digest the information presented to me, and afterwards have a meaningful discussion about it with him. Chief Emanuel ignored his request and simply began to read the PIP. Partway through reading the document, Plaintiff asked Chief Emanuel to stop, and expressed that Plaintiff was feeling singled out and bullied. Plaintiff also

3

recognized that Plaintiff was close to becoming over-agitated and prone to acting impulsively, so Plaintiff explained to Chief Emanuel that Plaintiff needed to excuse himself from work. Chief Emanuel also confirmed that he had not read his DISC Assessment after Plaintiff sent it to him earlier that month.

14. The next day on February 28, 2020, Plaintiff received a letter from Chief Emanuel suspending him pending a fitness for duty evaluation based on his conduct during the meeting where Chief Emanuel began reading his PIP out loud.

14. Plaintiff requested that the Town follow its grievance procedures for non-union personnel, but Chief Emanuel denied this request. Plaintiff then attended and completed the fitness for duty evaluation. Plaintiff did not, however, consent to the disclosure of its results until the Town first followed its grievance procedures.

15. The Town never followed its own grievance procedures. Instead, on March 19, 2020 Plaintiff received a letter from Chief Emanuel terminating employment with the Town.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE ADA, REHABILITATION ACT, AND RSA 354-A

16. All paragraphs of this Complaint are incorporated herein.

17. Upon information and belief, the Town is a recipient of federal funds.

18. Plaintiff was an individual considered disabled under the meaning of the ADA.

19. Plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

20. The Town knew of Plaintiff's PTSD diagnosis.

21. The Town unlawfully failed to engage in good faith in an informal dialogue with Plaintiff about potential reasonable accommodations concerning the effects of his PTSD before

providing him the PIP, when Mr. Emanuel read the PIP aloud despite Plaintiff's requests to stop so he could have time to review and meaningfully respond, and when denying Plaintiff's grievance without affording him the contemplated procedures.

22.     The Town unlawfully discriminated against Plaintiff by subjecting him to a fitness for duty evaluation.

23.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law, including interest, costs, expenses, and reasonable attorney's fees.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE ADA, REHABILITATION ACT, AND RSA 354-A

24.     All paragraphs of this Complaint are incorporated herein.

25.     Plaintiff engaged in protected conduct by communicating his desire to speak with Mr. Emanuel to discuss potential reasonable accommodations related to the effects of Plaintiff's PTSD before he received the PIP.

26.     Soon afterwards, Mr. Emanuel placed Plaintiff on a PIP. While Mr. Emanuel read the PIP aloud to Plaintiff, Plaintiff requested that he stop so he could have time to review and meaningfully respond. Mr. Emanuel refused.

27.     Mr. Emanuel subsequently suspended Plaintiff and mandated that he submit to a fitness for duty evaluation.

28.     After Plaintiff filed a grievance concerning his suspension and fitness for duty evaluation, the Town terminated Plaintiff without affording him the contemplated grievance procedures.

29. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted by law, including interest, costs, expenses, and reasonable attorney's fees.

## REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiff John Powers seeks judgment against Defendant as follows:

A. Declaratory relief that the conduct complained of herein is unlawful under applicable federal and state law;

B. Damages, including compensatory, liquidated, and punitive, in an amount to be determined at trial;

C. Pre-judgment and post-judgment interest, costs, expenses, disbursements, and reasonable attorney's fees; and

D. Such other and further relief which is deemed just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all matters triable by jury.

Respectfully submitted,

JOHN POWERS

By his Attorneys,

DICKINSON & SILVERMAN, PLLC

Dated: December 4, 2023   By:   s/ Gregory L. Silverman
Gregory L. Silverman (NH Bar # 265237)
63 Pleasant Street
Hooksett, NH 03106
(603) 724-8089
gsilverman@dickinsonsilverman.com