UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Powers

    v.

Town of Durham, New Hampshire

Case No. 23-cv-327-SM-TSM
Opinion No. 2025 DNH 108

O R D E R

Plaintiff, John Powers, filed suit against his former employer, the Town of Durham, New Hampshire, asserting claims for disability discrimination and retaliation in violation the Americans with Disabilities Act, the Rehabilitation Act, and New Hampshire Rev. Stat. Ann. 354-A.[1] Durham moves for summary judgment on Powers' claims. Powers objects. Durham's motion for summary judgment is denied.

Standard of Review

Summary judgment is appropriate only when there is no genuine dispute of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Gattineri v. Wynn MA, LLC, 93 F.4th 505,

---

[1] The parties appear to agree that claims under Title I of the ADA, the Rehabilitation Act, and RSA 354-A are commonly addressed under the same legal standards. Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 457 (1st Cir. 2016); D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012); Andersen v. Dartmouth Hitchcock Med. Ctr., 2015 WL 847447, at *7 (D.N.H. Feb. 26, 2015). For that reason, the court will not address the claims separately and will refer to them collectively as ADA claims.

509 (1st Cir. 2024) (quoting Fed. R. Civ. P. 56(a)).  A genuine factual dispute exists if "the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party," and a material fact is one "that has the potential of affecting the outcome of the case."  Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (internal quotation marks omitted).  To decide a summary judgment motion, the court draws all reasonable inferences in favor of the nonmoving party from the properly supported facts in the record.  Lech v. von Goeler, 92 F.4th 56, 64 (1st Cir. 2024).

## Discussion

Powers brings claims of disability discrimination (Count I) and retaliation (Count II) arising from the termination of his employment with the Durham Fire Department.  It is undisputed that Powers was disabled within the meaning of the ADA.  He suffers from diagnosed post-traumatic stress disorder ("PTSD").  Durham moves for summary judgment on all of Powers's claims.

A. Background Summary

The summary judgment record in this case presents unusual, if not unique, circumstances from which a jury could find that Durham, through the Durham Fire Department's Chief, David Emanuel, was fully aware of Powers's disability due to PTSD and its symptoms.  Emanuel and Powers worked together in the Durham Fire Department from 2011 to 2016.  Powers had PTSD when he was

hired, a condition the fire department was aware of when he was hired.  Indeed, Durham allowed Powers time for weekly therapy sessions during his working hours.  Emanuel knew that Powers suffered from PTSD and that he attended weekly therapy sessions.

At that time, both Emanuel and Powers worked under Chief Landry, who was a difficult boss.  Emanuel and Powers began to discuss their work challenges and details of their lives over lunch and on walks.[2]  As a result of their conversations, Emanuel came to understand that PTSD symptoms might include paranoid episodes, antisocial behaviors, and loss of focus and concentration.  Powers explained to Emanuel that his PTSD frequently manifested in symptoms of panic and rumination, particularly when confronted by conflict related to his work or job security.  Powers often discussed his difficulty communicating with Chief Landry and that Chief Landry triggered Power's PTSD symptoms by confronting him suddenly with criticism of his work performance.

Powers left Durham in 2016 to work for the Rochester Fire Department. Powers and Emanuel remained close friends and

---

[2] Because of difficulties in the fire department, in 2014, Durham "participated in a process which generated DISC assessments for all Durham firefighters."  Doc. no. 21-1, at 2, n.1.  A DISC assessment assesses the subject's "interpersonal relations in the workplace." Id. Powers believed his DISC assessment was highly accurate and shared it with Emanuel.  He also reminded Emanuel of the DISC assessment later, when the events at issue in this case occurred.

3

continued to communicate after Powers's move to Rochester.  In 2018, Chief Landry left the Durham Fire Department and Emanuel became chief.  Powers then returned to Durham to work under Chief Emanuel.  By the fall of 2019, however, their relationship began to deteriorate.  Emanuel was concerned about Powers's work performance, including complaints about his driving while in a fire department vehicle, the tone of some of his work communications, and his failure to attend several meetings without first communicating that he would be unavailable.  Powers considered it difficult to communicate with Emanuel, which he believed was triggering his PTSD symptoms.  By early 2020, Powers thought his relationship with Emanuel had become adversarial.

On January 17, 2020, Powers asked to meet with Emanuel one-on-one to discuss their communication issues and Emanuel's expectations of him.  Powers says that meeting never occurred. In a different meeting among Chief Emanuel, Powers, and a consultant, who was hired to improve the fire department's working culture, Powers attempted to raise those same communication and expectation issues.  The consultant responded that Powers was causing problems and undermining Emanuel's authority as Chief.

Emanuel prepared a Performance Improvement Plan ("PIP") for Powers, which he presented to Powers at a "Chief's Meeting" on

4

February 27, 2020, without prior warning.  Emanuel explained later that he surprised Powers with the PIP because otherwise Powers would have avoided that conversation.  Powers was surprised and uncomfortable when Emanuel began to read the PIP to him aloud at the meeting.  Powers twice asked Emanuel to stop reading and to allow him to take the PIP to read to himself and respond, but Emanuel continued to read the PIP aloud.  When Emanuel read a section of the PIP that required Powers to be at the station during all days and all business hours, Powers became distraught because he understood that requirement revoked his leave to attend weekly therapy sessions for PTSD during work hours.  Powers was obviously agitated and shaking and excused himself from the meeting.  After the meeting, Emanuel drafted a memo that questioned Powers's state of mind after the PIP meeting.  Powers responded to a text from Emanuel that evening, saying that he made it home safely but was not "okay".

The next day, Emanuel informed Powers that he was suspended from the department because of his reaction to the PIP.  Emanuel ordered Powers to have a fitness for duty ("FFD") evaluation.  The evaluation was scheduled.  Powers submitted a grievance to Emanuel challenging the PIP and the ordered evaluation.  Emanuel thought Powers was out of line by filing the grievance and notified Powers that there was no grievable issue.  He required Powers to return and finish listening to Emanuel read the PIP.

5

Powers attended the scheduled FFD evaluation but would not release the results to Durham while his grievance was pending. Emanuel, in turn, fired Powers on March 19, 2020, because he did not submit the results of the FFD evaluation. The town administrator notified Powers the next day that his grievance was not valid.

    B. Count I – Disability Discrimination

The ADA prohibits "a covered employer from discriminating against a qualified disabled individual in hiring, firing, promotions, compensation, and other terms and conditions of employment." Menninger v. PPD Dev., L.P., 145 F.4th 126, 132 (1st Cir. 2025) (citing 42 U.S.C. § 12112(a)). "An employer also discriminates against a disabled employee when it refuses to make reasonable accommodations for the employee's disability, so long as the employer knows about the disability and the accommodation would not impose an undue hardship on its business. Id. (citing 42 U.S.C. § 12112(b)(5)).

Durham moves for summary judgment on Count I on grounds that Powers did not explicitly ask for an accommodation for PTSD, that an offer to meet was extended after Powers was suspended, and the FFP evaluation was a business necessity. In response, Powers contends that Durham, through Chief Emanuel, very well knew of his PTSD disability and failed to provide reasonable accommodation (1) when he asked for a meeting with

6

Emanuel before the PIP, (2) when he asked Emanuel to stop reading the PIP aloud, (3) when the PIP rescinded Powers's existing accommodation permitting weekly therapy sessions during work hours, and (4) when Durham failed to follow its own grievance procedures before firing him. Doc. no. 23-1, at 21.

As Durham acknowledges, the ADA requires reasonable accommodations for known mental limitations of an otherwise qualified individual. Doc. no. 21-1, at 11-12; see also Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012). As noted above, the record includes evidence that Chief Emanuel, and hence Durham, was fully aware of Powers's PTSD, his weekly therapy during business hours, the effects of PTSD on his communications and interaction skills, and his symptoms of panic and rumination due to PTSD, particularly when confronted by conflict related to his work or job security. While the extent of Chief Emanuel's knowledge and understanding of Powers's limitations due to PTSD may be partially disputed in the context of the accommodations that Powers requested, that fact is a matter for trial, not summary judgment.

Powers also argues that Durham discriminated against him because of his disability when Emanuel presented him with the PIP based on pretextual reasons about work performance that were actually aimed at his PTSD. Durham then fired Powers when he withheld the results of the FFD evaluation.

7

Durham contends that requiring the FFD evaluation (which then lead to firing Powers) did not violate the ADA because it was job related and consistent with business necessity based on Powers's "unusual and insubordinate behavior at his PIP meeting, his unusual step of leaving his department vehicle at the station, and his 'I'm not okay' text message to Chief Emanuel." Doc. no. 21-1, at 17-18.  A reasonable jury, however, could conclude on this record that Chief Emanuel was very familiar with Powers's condition and knowingly provoked Powers's PTSD response during the PIP meeting by surprising him with the PIP and reading it aloud in a confrontational manner.  See López-López v. Robinson School, 958 F.3d 96, 107 (1st Cir. 2020) ("'Section 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" quoting Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2010)).  The facts underlying the business necessity defense are plainly disputed, and are material.

In sum, genuine disputes about material factual issues preclude summary judgment on Powers's claims in Count I.

C. Count II

The ADA forbids "covered employers from retaliating against employees who request or use reasonable accommodations, or who

8

oppose disability discrimination." Menninger, 145 F.4th at 132 (citing 42 U.S.C. § 12203) (emphasis added).  To prove an ADA retaliation claim, a plaintiff must show that he engaged in protected conduct, that he experienced an adverse employment action, and that the protected conduct and the adverse employment action were causally connected.  Rae v. Woburn Public Schools, 113 F.4th 86, 100 (1st Cir. 2024).  Durham seeks summary judgment on grounds that Powers did not engage in protected conduct and cannot show a causal connection between any protected conduct and an adverse employment action.

In response, Powers contends that Durham retaliated against him by imposing the PIP because he made requests for reasonable accommodation when he asked for a one-on-one meeting with Emanuel and because he told Emanuel that it was difficult to connect with him.  He also contends that Durham retaliated against him by ordering the FFD evaluation because of the events occurring before the PIP, because he asked Emanuel to stop reading the PIP aloud, because he said he was feeling bullied during the reading, and because he told Emanuel after he left the PIP meeting that he was not okay (and, no doubt, because Powers was making use of the accommodation for his therapy sessions already in place).  He also asserts that his termination was retaliation for filing a grievance against Chief Emanuel, and for other protected conduct.

9

For the reasons stated in Part B above, a reasonable jury could find on this record that Powers made requests for reasonable accommodation, was using a reasonable accommodation already in place, and complained about discriminatory conduct. There is no dispute that Durham imposed adverse employment actions against Powers. The timing of these events and the evidence of Chief Emanuel's unusual familiarity with Powers's disability and his possible use of Powers's disability against him could support findings in his favor on the elements of his ADA retaliation claim. For that reason, summary judgment is not appropriate.

## Conclusion

For the foregoing reasons, Durham's motion for summary judgment (doc. no. 21) is denied.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 10, 2025

cc: Counsel of Record