**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| JOHN POWERS<br><br>        Plaintiff,<br><br>                v.<br><br>TOWN OF DURHAM, NH,<br><br>        Defendant. | No. 1:23-cv-00327-SM |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS (PHASE ONE)

Pursuant to Federal Rule of Civil Procedure 51 and Local Rule 16.2(b)(1), Defendant

Town of Durham, NH ("Durham"), by its attorneys, Jackson Lewis, P.C., submits the following

proposed jury instructions.

                                        Respectfully Submitted,
                                        TOWN OF DURHAM, NH,

                                        By its attorneys,
                                        JACKSON LEWIS P.C.,

Date:  July 21, 2026          By:    */s/ K. Joshua Scott*
                                        K. Joshua Scott, NH Bar #17479
                                        100 International Drive, Suite 363
                                        Portsmouth, NH 03801
                                        Tel. (603) 559-2700
                                        Joshua.Scott@jacksonlewis.com

**JURY INSTRUCTION No. 1 – Plaintiff's Claims**

The plaintiff, John Powers, is a former employee of the Town of Durham, New Hampshire and, at the time of his separation, worked as the Durham Fire Department's Deputy Chief for Prevention. As Deputy Chief, he served under Fire Chief Dave Emanuel. On March 19, 2020, Powers was terminated as Deputy Chief following his refusal to undergo a fitness for duty examination ordered by Chief Emanuel.

On July 16, 2018, Powers was hired by Durham again as the Deputy Chief for Fire Prevention.  As Deputy Chief, Powers served as third in command of the Department, behind the Fire Chief and the Assistant Chief, Randall Trull. On November 8, 2019, Chief Emanuel provided Powers with a memo entitled Performance Expectations, in which he stated that he wanted to address behaviors that he had observed Powers engage in that were not aligned with the command staff. Only a month later, on December 18, 2019, Chief Emanuel presented Powers with a memo entitled Expectations for Driving. The Department had received several complaints regarding driving improprieties involving a marked Durham SUV. While the Department could not conclusively link these complaints to Powers' operation of his town vehicle, the Chief noted his expectation that town vehicles be operated in a safe manner.

On February 27, 2020, a meeting was held with Powers, Chief Emanuel, and Assistant Chief Trull. Chief Emanuel attempted to present Powers with a Performance Improvement Plan ("PIP"). Chief Emanuel wanted to address areas of concern with Powers' performance and set expectations going forward through the PIP. Chief Emanuel had various concerns regarding Powers' communication with colleagues as well as with other groups in Durham. The PIP set forth

2

various expectations of Powers, including increased presence at the fire station, better management of his workload, and more professional communications with members of the public and Town employees. Under the PIP, Powers was to be required to work standard business hours of 8:00 AM to 5:00 PM and was required to notify Chief Emanuel if he needed to modify his schedule. The PIP specifically noted that Powers "may use leave for medical or family appointments[.]" Powers was required to report weekly to Chief Emanuel about his activities for the upcoming week and to report on the status of activities under his management.

At the beginning of the meeting, Chief Emanuel stated that his purpose was to get the three Chiefs "on the same page," and to address several issues that they had been discussing over the past several months. Chief Emanuel handed Powers a copy of the PIP, and before he could say anything further, Powers asked why he was the focus of attention. Chief Emanuel began to read the memo, and he was interrupted by Powers stating that he "didn't know that he would be able to reply today." The Chief responded that a response was not needed that day, but that he would like to discuss the memo in its entirety. After Chief Emanuel read a few more sentences of the memo, Powers stood up, pushed in his chair, and stated that he was going home sick. He left his copy of the memo on the table, turned, stated good day, and walked out the door.

On February 28, 2020, Chief Emanuel informed Powers by letter that, based upon his response to the critical feedback of his performance, he was being suspended with pay pending a fitness for duty evaluation by Doctor Ronald Longpre or another psychologist designated by him. Powers was notified on March 3, 2020 that a fitness for duty evaluation was scheduled on March 13, 2020 with Jill Duran, Psy.D. On March 6, 2020, Powers purportedly filed a grievance regarding the February 27, 2020 PIP and his suspension pending a fitness for duty evaluation. The grievance was denied as the matter was deemed not subject to grievance.

Powers attended the screening with Dr. Durand but refused to allow Durham access to the results of his fitness for duty evaluation. Accordingly, the decision was made to terminate his employment on March 19, 2020 due his non-compliance with the order of Chief Emanuel that he submit to the examination.

Durham contends that the decision to terminate Powers' employment was based solely on his refusal to follow a direct order from Chief Emanuel to obtain a fitness for duty evaluation after his concerning response to notification of the PIP, specifically refusing to discuss the matter and storming out of the room, returning his vehicle, and not communicating with the command staff. Powers' alleged PTSD was not a factor in the termination decision and was never a factor at all during his employment with Durham.

**JURY INSTRUCTION No. 2 - Disability Discrimination**

The Americans with Disabilities Act ("ADA") and The Rehabilitation Act ("Rehab Act") prohibit an employer from discriminating against an employee because of their disability. *42 U.S. Code § 12101 et seq.; 29 U.S.C. § 701 et seq.* A disability discrimination claim is analyzed in the same manner under both the ADA and the Rehab Act. *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

**<u>JURY INSTRUCTION No. 3 - Disability Accommodation</u>**

In this case, Plaintiff claims that he has a disability and that Durham failed to accommodate him.

To establish his claim, Plaintiff must first prove by a preponderance of the evidence three elements (this is referred to as the plaintiff's *prima facie* case): Plaintiff must prove that: (1) he is disabled within the meaning of the ADA; (2) he was able to perform the essential functions of the job, with or without a reasonable accommodation; and (3) his employer knew about Plaintiff's disability and did not reasonably accommodate it. *Sutherland v. Peterson's Oil Serv.*, 126 F.4th 728, 742 (1st Cir. 2025); *Ortiz-Martinez v. Fresenius Health, P.R., LLC*, 853 F.3d 599, 604 (1st Cir. 2017).

**JURY INSTRUCTION No. 4 – Reasonable Accommodation**

A reasonable accommodation is a change in workplace conditions that would enable an employee to perform the essential functions of his job. *See* 29 C.F.R. § 1630.2(o)(1)(ii). Such an accommodation, though, must be feasible for the employer. *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 23 (1st Cir. 2004). Typically, reasonable accommodations include such things as job restructuring, modified work schedules, reassignment to vacant positions, and similar changes. *See* 42 U.S.C. § 12111(9)(B); *Calero-Cerezo*, 355 F.3d at 23. The reasonableness of any proposed accommodation, including its feasibility, must be assessed on a case-by-case basis. *See Calero-Cerezo*, 355 F.3d at 23.

"In order to show that a proposed accommodation is reasonable, Plaintiff must demonstrate that it 'would enable [him] to perform the essential functions of [his] job' and would be 'feasible for the employer under the circumstances.' *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012) (citations omitted); see also *Trahan v. Wayfair Me.*, LLC, 957 F.3d 54, 65 (1st Cir. 2020). The law is clear that an employer is not required to simply grant an accommodation. *See Enica v. Principi*, 544 F.3d 328, 342 (1st Cir. 2008) ("an employer is neither required to provide an employee with an accommodation of her choice nor to create a new position for that employee"); *Williams v. HealthReach Network*, 2000 U.S. Dist. LEXIS 9695, at *11 n.11 (D. Me. Feb. 22, 2000) ("the ADA . . . does not require an employer to . . . provide an employee an accommodation of the employee's choice").

7

**JURY INSTRUCTION No. 5 – Interactive Dialogue**

Both employers and employees have an obligation to engage in the interactive dialogue regarding a request for an accommodation in good faith. *EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014). ("[T]he process requires open communication by both parties, and an employer will not be held liable if it makes 'reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed . . . .'" *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 28 (1st Cir. 2001). 'The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.'" *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 104 (1st Cir. 2007) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)).

**JURY INSTRUCTION No. 6 - Retaliation**

To establish a prima facie case of retaliation, Plaintiff must show that: "(1) he was engaged in protected conduct; (2) he suffered some materially adverse action; and (3) the adverse action was causally linked to his protected activity." *Stratton v. Bentley Univ.*, 113 F.4th 25, 42 (1st Cir. 2024) (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007); see also *López-López v. Robinson Sch.*, 958 F.3d 96, 108 (1st Cir. 2020); *Kelley v. Corr. Med. Servs., Inc.*, 707 F.3d 108, 115 (1st Cir. 2013).[1]

To establish that the adverse employment action was causally linked to the protected activity, the Plaintiff must prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). In other words, the Plaintiff must show that he would not have been terminated or otherwise subjected to adverse employment actions by Durham "but for" his protected activity. *See, Hubbard v. Tyco Integrated Cable Sys.,* 2013 DNH 165, 219 (D.N.H. 2013) (*citing Torrech-Hernandez v. Gen. Elec. Co.*, 519 F. 3d 41, 48 (1st Cir. 2008)).

Proof of retaliatory intent is critical in this case. Retaliation is intentional if it is done voluntarily, deliberately, and willfully. It is up to you to decide whether the Plaintiff has proven his claim of retaliation by a preponderance of the evidence. This means the Plaintiff must show that it is more likely true than not that his engaging in protected activity was a substantial factor in the Defendant's decision to terminate him. If you find that the Plaintiff has met this burden, and that it is more likely than not that the Defendant would not have terminated him if he had not

---

[1] Retaliation claims under the ADA and Section 504 of the Rehabilitation Act are analyzed under the same three-element framework. *Rae v. Woburn Pub Sch.*, 113 F.4th 86 (1st Cir. 2024); *see also Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006) (elements of retaliation under Section 504); *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 36 (1st Cir. 2011) (elements of retaliation under the ADA).

engaged in the protected activity, then your verdict should be for the Plaintiff. If, on the other hand, you find that it is more likely than not that the Defendant's explanation for the termination was the actual reason for its decision, then your verdict should be for the Defendant.

*Fed. Emp. Jury Instructions §§ 3:325; 3:326.*

**JURY INSTRUCTION No. 7 – General Damages**

If you find that Plaintiff has proved any of his claims against Durham, then you must determine what amount of damages, if any, Plaintiff is entitled to recover. Plaintiff must prove his damages by a preponderance of the evidence. If you decide that the defendant was legally at fault, you must decide whether the plaintiff has proved any of the items of loss or harm listed in these instructions.

For each item of loss or harm that plaintiff claims, plaintiff must prove that it is more probable than not that (1) plaintiff has or will have such a loss or harm and (2) the loss or harm was caused by the legal fault of defendant. If you decide that plaintiff has provided these two matters to be more probable than not, you must then decide how much money or damages will reasonably compensate plaintiff for the items of loss or harm. *N.H. Civil Jury Instructions* § 9.2 (2001); *McNeal v. Lebel*, 157 N.H. 458, 466 (2008); *General Linen Servs. v. Smirnioudis*, 153 N.H. 441, 443 (2006).

**REQUEST No. 8 - Computation of Damages**

The law does not require mathematical certainty in computing damages. However, your computation of the damage award must be supported by evidence; it cannot be based on speculation. *N.H. Civil Jury Instructions* § 32.42 (2001).

**REQUEST NO. 9 - Mitigation of Damages**

The Plaintiff has the obligation to minimize his damages to the extent possible and practical. In assessing the damages recoverable by the Plaintiff, you may not give to the Plaintiff any award for harm resulting from his failure to make reasonable efforts to minimize his own losses. The Plaintiff may not recover for any damages which could have been avoided by his own reasonable efforts, without undue risk, expenses or humiliation. For example, if you find that the plaintiff failed to minimize his damages by making reasonable efforts to obtain and maintain another job, you may not award damages, lost wages, lost benefits or other losses that could have been avoided by his employment. *N.H. Civil Jury Instructions* § 32.47 (2001); *See, Robert E. Tardiff, Inc. v. Twin Oaks Trust*, 130 N.H. 673, 546 A.2d 1062 (1988) ("[r]ecovery will not be permitted of damages which could have been avoided by reasonable effort without undue risk, expense or humiliation"); *Zareas v. Smith*, 119 N.H. 534, 538-39, 404 A.2d 599, 60102 (1979). *See, generally, Millimet v. First Federal Savings & Loan Association of Lowell*, 129 N.H. 526, 533 A.2d 328 (1987).

**REQUEST No. 10 - Measure of Damages Must be Based on Evidence**

If you find for Plaintiff in this case on one or more of his claims, I instruct you that your measure of damages must be based on the evidence and not on any speculation or on any guesses as to factors that have not been presented to you as part of the evidence. If you find for the Plaintiff, you may only award damages that compensate the plaintiff for his loss, and you must base your award solely on the evidence that Plaintiff has offered of his actual damages. *Elwood v. Bolte*, 403 A.2d 869, 119 N.H. 508, 511 (1979); *Vratsense v. N.H. Auto, Inc.*, 289 A.2d 66, 112 N.H. 71, 72-73 (1972).

**<u>REQUEST No. 11 – Damages for Disability Discrimination or retaliation</u>**

The following potential damages may be awarded if you find in favor of the Plaintiff, but only if you find in his favor, otherwise, no award of damages should be considered.

A. <u>Compensatory Damages</u>

The general purpose of awarding compensatory damages is to give a sum of money, which, as nearly as possible, will restore the Plaintiff to the position he would be in if the wrong had not been committed. Compensatory damages, therefore, are awarded to make the plaintiff whole, not to punish the defendant.

Plaintiff seeks an award of damages for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, and other noneconomic losses. To be entitled to those damages, the Plaintiff must show that it is more probable than not that Durham's conduct caused his injuries.

Damages are caused by the defendant's wrongful conduct if that conduct caused or substantially contributed to cause the injuries claimed by the plaintiff. The defendant's wrongful conduct need not be the only cause of the damages claimed by the plaintiff. To be entitled to an award of damages, Plaintiff must show, by a preponderance of the evidence, that Durham's wrongful conduct caused or substantially contributed to cause the injuries he claims.

If you decide that Plaintiff has proved that it is more probable than not that Durham's wrongful conduct caused or substantially contributed to cause the injuries that he claims, then you should award him that sum of money that will fairly, justly, and reasonably compensate his for all the damage suffered as a direct result of Durham's wrongful conduct.

In determining the amount of damages, if any, to allow the plaintiff, you may draw such inferences from the evidence of the nature of his injuries and the results thereof as are justified by your common experiences. Damages are not to be awarded on the basis of guesswork or speculation, or on the basis of

15

passion, prejudice, or sympathy. Instead, they must be awarded, if at all, based upon your assessment of what full and fair compensation should be. You must not speculate or consider any other possible sources of benefit the Plaintiff may have received.

Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. Nor should you award compensatory damages for speculative injuries; they may be awarded only for those injuries that the plaintiff has actually suffered or that he is reasonably likely to suffer in the future as a consequence of the defendant's wrongful conduct.

1. Back Pay

If you find in favor of Plaintiff on his disability discrimination claims, then he is entitled to the pay he would have earned if he had not been wrongfully terminated. This is known as back pay. Back pay is an element of compensatory damages and consists of the wages and employee benefits the plaintiff would have received but for the defendant's wrongful conduct. It includes not only wages, salary, and fringe benefits, but also raises, vacation and sick pay, bonuses, cost-of-living increases, group life contributions, profit sharing, and retirement or pension plans.

To calculate the amount of back pay to which Plaintiff is entitled, you should first determine the wages and employee benefits he would have received from Durham. Then, you should subtract from that amount the wages and employee benefits Plaintiff received during that period of time or could have earned through reasonable efforts to mitigate his damages. Plaintiff must prove the amount of his back pay damages by a preponderance of the evidence; however, he need not prove back pay damages with mathematical certainty.

2. Front Pay

If you find in favor of Plaintiff on his disability discrimination claims, then you should determine the amount of damages, if any, that will fairly compensate him for the amount of wages and

fringe benefits he reasonably would have received in his employment with Durham in the future (that is, from the date of your verdict forward). This is referred to as "front pay." Plaintiff must prove the amount of front pay damages by a preponderance of the evidence; however, he need not prove front pay damages with mathematical certainty.

3.   Emotional Distress Damages

 If you find in favor of Plaintiff on his disability discrimination claims, you must consider, as an element of compensatory damages, whether he is entitled to reasonable compensation for pain, suffering, and mental anguish which you find by a preponderance of the evidence was caused by Durham's wrongful conduct. There is no standard prescribed by law by which to fix reasonable compensation for pain, suffering, and mental anguish. In making an award for this element, you should exercise your reasonable judgment and determine damages that are full, fair, and adequate in light of the evidence. Plaintiff may only recover for any pain, suffering, or mental anguish which he suffered as a result of Durham's wrongful conduct.

B. Punitive Damages

The ADA permits you to award punitive damages in limited circumstances as a punishment to a defendant and as a warning to others to discourage them from following the defendant's example. If you find in favor of Plaintiff on his disability discrimination claim under the ADA, then you must also consider whether an award of punitive damages is justified. You may award punitive damages only if you determine by a preponderance of the evidence that Durham discriminated against Plaintiff in violation of federal law and that those discriminatory actions were done maliciously or with reckless indifference to his federally protected rights. In other words, you may award punitive damages only if you determine, by a preponderance of the evidence, that Durham discriminated against Plaintiff, despite

knowing its conduct was illegal or that it acted with reckless disregard for the laws prohibiting such discrimination.

In addition, Plaintiff bears the burden of proving that the defendant's employee who acted with malice or with reckless indifference to his federally protected rights was, at the time, a managerial or supervisory employee, who was acting within the scope of his or his employment.

Punitive damages are not intended to compensate a plaintiff for his injuries, but are, instead, intended to punish the defendant and to prevent similar conduct in the future. Thus, if you award punitive damages, you may consider Durham's financial status and the impact of it having to pay such an award.

Punitive damages must bear a reasonable relationship to Plaintiff's actual injury. However, no single numerical equation has been made to easily link punitive damages to other damages. In determining a reasonable relationship to the actual injury, you may consider, among other relevant factors, the following:

- The impact or the severity of Durham's conduct;

- Whether the punitive damages have a reasonable relationship to the other damages awarded to Plaintiff; and

- The deterrent effect, given Durham's financial condition, that a punitive damages award will have on its future conduct and on the conduct of others.

C. Enhanced Compensatory Damages

If you find that Plaintiff proved his race discrimination or retaliation claims under RSA 354-A and suffered actual damages that were caused by the Defendant, there are certain circumstances under which New Hampshire law permits you, but does not require you, to also consider whether an award of enhanced compensatory damages is justified.

Enhanced compensatory damages may not be awarded in an effort to punish the Defendant. If you find in favor of the Plaintiff on his claim of religious discrimination under RSA 354-A, then you may award him enhanced compensatory damages if you find that the Defendant's conduct was, more probably than not, willful or reckless. A defendant acts "willfully" if the law imposes a duty on it, it knows of that duty, and it voluntarily and intentionally violates that duty. "Reckless" means intentional conduct that a person knew or reasonably should have known was unlawful – that is, acting with a conscious disregard of, or willful blindness to, what the law requires.

Respectfully Submitted,
TOWN OF DURHAM, NH
By its attorneys,
JACKSON LEWIS P.C.,

Date:   July 21, 2026                    By:    /s/K. Joshua Scott
                                                K. Joshua Scott, NHBA# 17479
                                                100 International Drive, Suite 363
                                                Portsmouth, NH 03801
                                                603.559.2711 | Direct
                                                joshua.scott@jacksonlewis.com

Certificate of Service

I hereby certify that a copy of the foregoing was this day served via the court's electronic filing system on all parties of record.

Date:   July 21, 2026                    By:    /s/K. Joshua Scott
                                                K. Joshua Scott

4936-6894-0477, v. 1

20